MARGARET S. BERRY CARTER *v.*
MAUPIN CUMMINGS, JUDGE

5-5636                                         473 S.W. 2d 437

Opinion delivered December 6, 1971

*Bill Thompson,* for Petitioner.

*Jones & Segers,* for Respondent.

CARLETON HARRIS, Chief Justice. Margaret S. Berry Carter, petitioner herein, a resident of Sebastian County, was served with a summons in Washington County on January 12, 1971, a complaint having been filed by Margaret M. Carter in the Circuit Court of that county on the same date. Mrs. Margaret M. Carter, a resident of Washington County, sought judgment against petitioner on a $50,000 promissory note. Thereafter, petitioner filed her motion to quash the service, the motion being based on a contention that petitioner had been lured into Washington County by fraud, deceit, and artifice for the sole purpose of serving a summons on her in that jurisdiction. A hearing was held, at which time several witnesses testified, and at the conclusion of the hearing, the court overruled the motion to quash, holding that petitioner had failed by a preponderance of the evidence to show either artifice or fraud sufficient to justify the quashing of the service. Petitioner seeks a Writ of Prohibition in this court to prohibit the Washington County Circuit Court from proceeding further.

Petitioner is the present wife of Larry Carter, and Margaret M. Carter, who instituted this suit, is the former wife of Larry Carter. Petitioner testified that about a week before January 12, Margaret Carter called her long distance and asked whether petitioner was going to

pay the note; she was informed that the present Mrs. Carter would not pay it. According to petitioner, Margaret Carter then advised that she (Margaret) did not care to do anything about it at this time and she told the petitioner "Don't worry about it". A few nights later Margaret Carter again called and talked to Mr. Carter. Mr. Carter testified that his ex-wife advised that the braces for their baby son, Benjamin, were ready, and inquired if he would take Benjamin to the doctor and pay for the braces; that it would be necessary for him to take the baby in order that the braces could be paid for at the same time they were fitted. A couple of days later, according to the testimony, Margaret Carter again called the petitioner and asked if she would accompany her husband to Fayetteville; that she (Margaret) had to be out of town; Margaret's baby sitter had to shop for her sister's wedding and wanted the morning off, and Margaret would like for the petitioner to help Larry in looking after the second oldest child, Brennan. Petitioner agreed, and the two went to Fayetteville, but found that Brennan had gone home with his grandmother the previous night, and they then took the youngest child to the doctor's office to get the braces fitted. She was served with a summons while she was in the office. Margaret Carter's version is somewhat different. She stated that she called her ex-husband because she did not have the $118.58 to pay the doctor for the braces; that she requested the ex-husband to pay this amount, and he replied that he would pay it if he knew that the braces were good, and "not plastic braces". Margaret replied that she was willing for him to take the child to the brace man and the doctor. She said that since she was going to be out of town, she asked petitioner to take care of Brennan on that date,[1] but Margaret Carter steadfastly maintained that the idea of Carter and petitioner making the trip to Fayetteville was entirely Mr. Carter's idea.

In *Robinson v. Bossinger*, 195 Ark. 445, 112 S. W. 2d 637, we quoted from § 17 of the chapter on Process in 21 R. C. L., p. 1275, as follows:

[1]Margaret Carter testified that she went to Little Rock to see her brother sworn into the Legislature.

"If a person is induced by artifices or fraud to come within the jurisdiction of a court for the purpose of obtaining service of process on him, and process in an action brought against him in such court is there served, it is an abuse of legal process and the fraud being shown, the court will, on motion, set aside the service."

This is the contention of petitioner, and her basis for seeking the Writ of Prohibition.

We do not agree that prohibition is the proper remedy, and we could not better express our views than to quote from *Robinson* v. *Means, Judge,* 192 Ark. 816, 95 S. W. 2d 98. There, after stating that the question was one of fact, and with language entirely *apropos* to the present litigation, we said:

"In cases of that kind wherein jurisdiction depends upon the presentation or establishment of certain facts, then that question must be decided by the trial court, and even though he should decide wrong we are not at liberty to correct his error except on appeal. *Finley* v. *Moose,* 74 Ark. 217, 85 S. W. 238.

We said in *Arkansas Democrat* v. *Means,* 190 Ark. 948, 82 S. W. (2d) 256: 'Where the court has jurisdiction over the subject matter, and the question of its jurisdiction of the person turns upon some fact to be determined by the court, its decision that it has jurisdiction, if wrong, is an error, and prohibition is not the proper remedy.' *Order of Railway Conductors of America* v. *Bandy,* 177 Ark. 694, 8 S. W. 2d 448. * * *

Probably in most instances the facts upon which jurisdiction may rest or be determined are controverted. In most other instances they might be controverted, that is to say, there is the possibility of the facts being disputed. In either event the matter is one that must be determined by the trial court, and in the proper exercise of the trial court's functions we do not interfere by prohibition. We might differ most seriously from the view taken by the trial court, but if we think the trial court erred, we can correct that only upon appeal."

Appellant contends that she has no adequate remedy at law for she has equitable defenses going to the merits of the complaint which 'would entitle her to be heard in Chancery, but if she seeks this relief by way of a motion to transfer, she may be held to have waived her objections to the unlawful service; that because of fixed opinions of the citizens of Washington County, she would be entitled to seek a change of venue, but again, such a course might operate as a waiver of the objections to the unlawful service. Still further, she might find herself in the same situation if she filed a counterclaim. Similar arguments have been made in other cases; for instance in *Robinson* v. *Means, Judge, supra,* it was asserted that if the writ were not granted, and petitioners were forced to answer, and upon an adverse decision, appeal to this court, they would thereby enter their appearance, even though this court should find the service not good.

Those matters are not presently before us, and therefore require no discussion, but our cases are very clear that where the court has jurisdiction over the subject-matter and the question of the jurisdiction of the person depends upon some fact to be determined by the court, prohibition is not the proper remedy.

Writ denied.